**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

        *-and-*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*


United States District Court
Southern District of New York                    1:19-cv-09362

| | |
|---|---|
| Omar Pinkston, individually and on behalf of all others similarly situated, | |
| Plaintiff | Class Action Complaint |
| - against - | |
| Whole Foods Market Group, Inc., | |
| Defendant | |

        Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

        1.      Whole Foods Market Group, Inc. ("defendant") manufactures, distributes, markets, labels and sells almondmilk beverages purporting to be characterized by vanilla under the 365 Organic brand ("Products").

I.   Increase in Consumption of Non-Dairy Milks

1

2.     Over the past ten years, the number of dairy milk substitutes has proliferated to include "milks" (milk-like beverages) made from various agricultural commodities.

3.     Reasons for consuming non-dairy milks include avoidance of animal products due to health, environmental or ethical reasons, dietary goals or food allergies.

4.     Two of the most popular milk alternatives are made from soybeans and almonds.

5.     Reasons for consumers choosing soymilk instead of almondmilk include tree nut allergies, creamier consistency, greater amount of soy protein and more B vitamins, magnesium and potassium.[1]

6.     Reasons for consumers choosing almondmilk instead of soymilk include soy allergies, sweeter taste, similar consistency to skim and low-fat milk, nutty flavor and higher levels of vitamin E.

7.     Recent studies indicate that of the 7.2 million U.S. adults with food allergies, 3 million are allergic to tree nuts while 1.5 million are allergic to soy.[2]

8.     Whether due to few people being allergic to soy and tree nuts (almonds) or the different qualities of each product type, consumers have preferences for one over the other and seldom switch between their "plant milk" of choice.

II.  Products

9.     The Products are available to consumers from defendant's hundreds of stores across all 50 states, directly from defendant's website and from Amazon.com.

10.    The Products are sold in sizes including 32 and 64 ounces in Vanilla and

---

[1]  Yahoo Food, Almond Milk Vs. Soy Milk: Which Is Better?, September 5, 2014.
[2]  Ruchi Gupta et al., "Prevalence and severity of food allergies among US adults," JAMA network open 2, no. 1 (2019): e185630-e185630.

Unsweetened Vanilla and represented as vanilla on the labels, in point-of-sale marketing, store display ads, print circulars, promotions, websites, television and/or radio ads.

11.    The Products' front labels and/or advertising makes direct representations with respect to their primary recognizable and characterizing flavor, by the word "VANILLA" and/or vignette.[3]

Regular        Unsweetened



III. Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

12.    The tropical orchid commonly known as "vanilla" does not  develop its prized flavor on its own.

13.    By law, vanilla refers to the "the total sapid and odorous principles extractable from

---

[3] 21 C.F.R. § 101.22(i).

one-unit weight of vanilla beans."[4]

14.    Shortly after the passage of the Pure Food and Drugs Act of 1906, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[5]

15.    This demand could not be met by the natural sources of vanilla, leading manufacturers to devise methods to imitate vanilla's flavor and appearance.

16.    Though the Pure Food and Drugs Act was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[6]

17.    Daily headlines tell a story of a "resurgent" global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[7]

18.    While "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

19.    Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide

---

[4] 21 C.F.R. §169.3(c)

[5] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

[6] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[7] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

variability of quality and value of vanilla flavorings," second only to saffron in price.[8]

20.    The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities.[9]

| Type of Food Fraud | Application to Vanilla |
|---|---|
| ➢ Cheating on analytical tests by containing markers specifically tested for | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Cheating by giving consumers the impression the food or ingredient is present in greater amounts and/or higher quality form than it actually contains | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks they are a result of the product containing real vanilla bean, when the ground beans have been exhausted of flavor, and any vanilla flavor tasted may not even be due to the presence of real vanilla |
| ➢ Substitution or Replacement a food product/ingredient with an alternate food product/ingredient of lower quality | • Tonka beans, which are banned from entry to the United States, instead of vanilla beans<br>• Coumarin, phytochemical found in Tonka beans, to increase the vanilla flavor perception |
| ➢ Coloring agents to produce a more attractive color | • Caramel in vanilla extracts to darken the substance's color additives like caramel to enhance the hue of an imitation vanilla so it more closely resembles real vanilla[10]<br>• Annatto and turmeric in dairy products purporting to be flavored with vanilla, to darken the color to |

---

[8] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.

[9] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

[10] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

|  |  |
|---|---|
|  | better resemble the hue of rich, yellow butter |
| ➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, derived from wood pulp, tree bark or coal tar |
| ➢ Ingredient list deception[11] | • Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list – "ground vanilla beans" as containing actual vanilla flavor when they are devoid of any naturally occurring vanilla flavor |
|  | • "Vanilla With Other Natural Flavor" sold by flavor suppliers to manufacturers, which contains vanillin as part of the "WONF," in violation of vanilla-vanillin regulations; manufacturers then deceive consumers by labeling ingredient "natural flavor" |
| ➢ Diluting/Extending | • Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[12] |
|  | • "Spiking" or "fortification" of vanilla through addition of natural flavors including vanillin, which simulates vanilla taste but obtained from tree bark |
| ➢ Compounding – "to mix flavor materials together at a special ratio in which | • "Flavor Compounding Is a Skilled Art and Science Designed to Produce a Flavor Perception That Seems to be Authentic or at Least Derived from a |

---

[11] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar
[12] Berenstein, 423.

they [sic] compliment each other to give the desirable aroma and taste."[13]

Natural Source"[14]

- **Then (1911):** The "public should clearly understand" that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label."[15]
- **Now (2018):** According to the head of "taste solutions" at global conglomerate Kerry, "The challenge is to find a vanilla flavor that matches the taste of pure vanilla natural extracts."[16]
- The solution? "[G]et creative" and "build a compounded vanilla flavor with other natural flavors," Mr. Curtis said. "This solution can provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."

## IV. The Unqualified Representations as "Vanilla" are Misleading

21.    The front labels represent the Products' characterizing flavor is vanilla and that they contain a sufficient amount of the characterizing food ingredient, vanilla flavoring or vanilla extract, to independently characterize the Products.

A.    Products' Ingredient Lists

---

[13] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[14] Charles Zapsalis et al., Food chemistry and nutritional biochemistry. Wiley, 1985, p. 611.
[15] Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168.
[16] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.

22.    The unqualified, prominent and conspicuous representations as "Vanilla" is false, deceptive and misleading because the Products contain flavoring other than vanilla, as revealed by "Natural Flavor" and "Organic Natural Flavor" on the ingredient lists.[17]

Regular                                             Unsweetened

INGREDIENTS: ORGANIC ALMONDMILK (FILTERED WATER, ORGANIC ALMONDS), ORGANIC CANE SUGAR, SEA SALT, NATURAL FLAVOR, ORGANIC NATURAL FLAVOR, TRICALCIUM PHOSPHATE, GELLAN GUM, ORGANIC LOCUST BEAN GUM, ORGANIC VANILLA EXTRACT, VITAMIN A PALMITATE, ERGOCALCIFEROL (VITAMIN D2), DL-ALPHA-TOCOPHEROL ACETATE (VITAMIN E), CYANOCOBALAMIN (VITAMIN B12).

INGREDIENTS: ORGANIC ALMONDMILK (FILTERED WATER, ORGANIC ALMONDS), ORGANIC NATURAL FLAVOR, SEA SALT, ORGANIC VANILLA EXTRACT, TRICALCIUM PHOSPHATE, GELLAN GUM, ORGANIC LOCUST BEAN GUM, VITAMIN A PALMITATE, ERGOCALCIFEROL (VITAMIN D2), DL-ALPHA-TOCOPHEROL ACETATE (VITAMIN E), CYANOCOBALAMIN (VITAMIN B12).

**INGREDIENTS:** ORGANIC ALMONDMILK (FILTERED WATER, ORGANIC ALMONDS), ORGANIC CANE SUGAR, ORGANIC LOCUST BEAN GUM, SEA SALT, NATURAL FLAVORS, SUNFLOWER LECITHIN, TRICALCIUM PHOSPHATE, GELLAN GUM, POTASSIUM CITRATE, ORGANIC VANILLA EXTRACT, VITAMIN A PALMITATE, ERGOCALCIFEROL (VITAMIN D2), DL-ALPHA-TOCOPHEROL ACETATE (VITAMIN E), CYANOCOBALAMIN (VITAMIN B12).

**INGREDIENTS:** ORGANIC ALMONDMILK (FILTERED WATER, ORGANIC ALMONDS)., ORGANIC NATURAL FLAVOR, SEA SALT, ORGANIC VANILLA EXTRACT, TRICALCIUM PHOSPHATE, GELLAN GUM, ORGANIC LOCUST BEAN GUM, VITAMIN A PALMITATE, ERGOCALCIFEROL (VITAMIN D2), DL-ALPHA-TOCOPHEROL ACETATE (VITAMIN E), CYANOCOBALAMIN (VITAMIN B12).

23.    "Natural Flavor" is ahead of the vanilla ingredient, "Organic Vanilla Extract," on the ingredient list, which means the Products have *more* non-vanilla natural flavor than real vanilla.[18]

---

[17] The varieties of the Products contain the same or substantially similar ingredients except for cane sugar.
[18] 21 C.F.R. § 101.4(a)(1) ("Ingredients required to be declared on the label or labeling of a food, including foods that comply with standards of identity, except those ingredients exempted by 101.100, shall be listed by common or usual name in <u>descending order of predominance by weight</u>") (emphasis added).

24.    The front label representations of "Vanilla" are misleading because the Products (1) contain an insufficient amount of vanilla to independently characterize the Products and (2) the "natural flavor" does not simulate or resemble vanilla.

25.    A non-misleading front label description could be "Natural Vanilla Flavored Almondmilk" or "Vanilla Flavored Almondmilk."[19]

26.    "Natural flavor" refers to "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors.[20]

27.    The Products' ingredient list, indicating "vanilla extract" and "natural flavor" separately, is a curiously rare and uncommon declaration of these ingredients.

B.  Combination of Vanilla and Non-Vanilla Flavors in One Package

28.    When companies use vanilla and non-vanilla flavors in a product, they are often purchased in one package.

29.    The reasons for doing this may include: (1) having to manage fewer suppliers, (2) ensuring the flavors complement each other, (3) the non-vanilla natural flavors are intended to resemble, simulate and enhance the vanilla flavor, (4) consistency within the product batches the flavor is added to, (5) volatile nature of flavoring constituents, (6) the ability to make misleading representations with respect to a product's flavor and ingredients and (7) ease of use.

30.    Where a multicomponent ingredient is included in a food, it can be declared by (1) indicating the common or usual name of the ingredient with the components declared within

---

[19] 21 C.F.R. § 101.22(i)(1)(i) ("If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food").
[20] 21 C.F.R. § 101.22(a)(3).

parentheses in order of predominance by weight and (2) by splitting up the components of the ingredient and incorporating them into the statement of ingredients in order of predominance by weight.[21]

31.    When a food manufacturer receives a flavor component from a flavor supplier that consists of two or more natural flavor ingredients, it can be labeled by declaring each ingredient by its  common or usual name such as "strawberry flavor, banana flavor."[22]

32.    Flavorings are not subject to the provisions which allow for the components of an ingredient to be incorporated into the statement of ingredients in order of predominance by weight, such that when "strawberry flavor, banana flavor" is added to a fabricated food, it will be designated as "natural flavor."[23]

33.    It is conceivable the vanilla extract and natural flavor ingredients were added to the Products separately, but just as plausible they were added in a vanilla combination ingredient and separated out into their components, even though this would be misleading to consumers and contrary to law.

C.  Labeling of Combination of Vanilla and Natural Flavor

34.    Where a vanilla ingredient is combined with non-vanilla natural flavors, the ingredient list should only indicate "natural flavor."

35.    Where a product represented with a characterizing flavor of vanilla and the ingredient list identifies "natural flavor" as the exclusive flavoring ingredient or as one amount such flavoring ingredients, it means (1) the flavoring in the food or beverage is not exclusively vanilla and (2) the

---

[21] 21 C.F.R. § 101.4(b)(2).
[22] 21 C.F.R. § 101.22(g)(2).
[23] *See* 21 C.F.R. § 101.4(b)(1) ("Spices, flavorings, colorings and chemical preservatives shall be declared according to the provisions of 101.22.") *with* 21 C.F.R. § 101.22(h)(1) ("The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way: (1) Spice, natural flavor, and artificial flavor may be declared as "spice", "natural flavor", or "artificial flavor", or any combination thereof, as the case may be.")

product contains non-vanilla flavors obtained from natural sources other than vanilla beans.

36.    "Natural flavor" would not be used as a synonym for an exclusively vanilla ingredient because (1) a rational company would not use a ubiquitous and opaque term where the alternatives were higher value ingredients and (2) the vanilla ingredients have common or usual names defined by regulation.

D.    Vanilla With Other Natural Flavors on Ingredient List and as Front Label Description

37.    The ingredient most commonly used in the trade to describe a combination of flavors from real vanilla and non-vanilla natural sources, which simulate, resemble and reinforce vanilla is known as Vanilla With Other Natural Flavors" or "Vanilla WONF."[24]

38.    A non-vanilla product which contains "other natural flavors" is required to be designated on the front label by "[CHARACTERIZING FLAVOR] + FLAVORED + WONF."[25]

39.    On the ingredient list, this ingredient is often declared inconsistently, without uniformity and in a misleading way: "Natural Vanilla Flavor with Other Natural Flavor," "Natural Vanilla Flavor, Natural Flavor," "Vanilla Extract, Natural Flavor" "Natural Flavor, [INTERVENING INGREDIENTS] Vanilla Extract," instead of the required "Natural Flavor."

40.    The regulations require only a declaration of "natural flavor" because if a company were permitted to separate the components of the natural flavor – like vanilla extract or vanilla flavoring – and insert them into the ingredient list in order of predominance by weight, a manufacturer would draw attention to the more valuable component of the combination ingredient, giving consumers the impression that sub-component is present in an amount greater than it

---

[24] 21 C.F.R. § 101.22(i)(1)(iii) ("If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.")
[25] 21 C.F.R. § 101.22(i)(1)(iii).

actually is.

E. Front Label Flavor Description of "Vanilla" and "Natural Flavors" Without More, Would Be Misleading

41.    If the vanilla extract and natural flavor in the Products actually referred to a "Vanilla WONF," its front label would be misleading if the description was only "Vanilla Almondmilk With Other Natural Flavor."

42.    By declaring "vanilla" separately, consumers would expect the Products contain the standardized vanilla ingredients – vanilla flavoring or vanilla extract – and *a greater amount* of these high value products, when they actually contain a compounded version.

43.    Since the amount of vanilla flavoring, vanilla extract and natural flavor have a material bearing on the price and consumer acceptance of the Products, their identity statement and/or front label should be accompanied by the percentages of vanilla and non-vanilla flavors, i.e., 50% vanilla flavor and 50% non-vanilla flavors.[26]

44.    The percentage requirements would distinguish the flavoring component in the Products from those which contain the standardized, full strength ingredients.

F. Vanilla WONF with Added Vanillin Would be Misleading

45.    If the "WONF" component of the Vanilla WONF contained vanillin from a non-vanilla natural source, it would be considered a vanilla-vanillin combination ingredient: Vanilla-vanillin extract, Vanilla-vanillin flavoring or Vanilla-vanillin powder.[27]

46.    The labeling and disclosure for such products would be controlled not by the general flavoring regulations but by the vanilla standards, wherever there would be a conflict between

---

[26] 21 C.F.R. § 102.5(b).
[27] 21 C.F.R. § 169.180, § 169.181, § 169.182.

them.

47.    The combination of vanilla and vanillin requires the name of the ingredient on the ingredient list be "followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring),'" even if the vanillin is made from natural materials and through a natural process [28]

48.    If a product made with a vanilla-vanillin combination ingredient represented that its characterizing flavor was vanilla, its front label would be required to declare the presence of vanillin and/or artificial flavor(s).

49.    These requirements prevent consumers from being misled by products which "boost," "fortify" or "spike" a miniscule amount of real vanilla with the addition of vanillin not from real vanilla.

50.    Without proportionally conspicuous disclosure of a product's vanilla and vanillin components, consumers would pay more money for products that may taste like vanilla even though the taste is not derived from vanilla beans.

V.  Products are Misleading Because They are Labeled and Named Similar to Other Products

   A.  <u>Products of Competitor and Defendant</u>

   51.    The following is an example of the product of defendant and competitor.

            <u>Competitor Product</u>                                    <u>Product</u>

---

[28] See 21 C.F.R. § 169.180(b), § 169.181(b), § 169.182(b).





**INGREDIENTS:** Organic Almond Base (Filtered Water, Organic Almonds), Organic Vanilla Flavor, Sea Salt, Sunflower Lecithin, Organic Locust Bean Gum, Gellan Gum, Vitamin A Palmitate, Ergocalciferol (Vitamin D2), DL-Alpha-Tocopheryl Acetate (Vitamin E), Riboflavin (Vitamin B2), Zinc Gluconate, Cyanocobalamin (Vitamin B12).

**INGREDIENTS:** ORGANIC ALMONDMILK (FILTERED WATER, ORGANIC ALMONDS), ORGANIC NATURAL FLAVOR, SEA SALT, ORGANIC VANILLA EXTRACT, TRICALCIUM PHOSPHATE, GELLAN GUM, ORGANIC LOCUST BEAN GUM, VITAMIN A PALMITATE, ERGOCALCIFEROL (VITAMIN D2), DL-ALPHA-TOCOPHEROL ACETATE (VITAMIN E), CYANOCOBALAMIN (VITAMIN B12).

**INGREDIENTS:** Organic Almond Base (Filtered Water, Organic Almonds), Organic Vanilla Flavor, Sea Salt, Sunflower Lecithin, Organic Locust Bean Gum, Gellan Gum, Vitamin A Palmitate, Ergocalciferol (Vitamin D2), Dl-Alpha-Tocopheryl Acetate (Vitamin E), Riboflavin (Vitamin B2), Zinc Gluconate, Cyanocobalamin (Vitamin B12).

**INGREDIENTS:** ORGANIC ALMONDMILK (FILTERED WATER, ORGANIC ALMONDS)., ORGANIC NATURAL FLAVOR, SEA SALT, ORGANIC VANILLA EXTRACT, TRICALCIUM PHOSPHATE, GELLAN GUM, ORGANIC LOCUST BEAN GUM, VITAMIN A PALMITATE, ERGOCALCIFEROL

(VITAMIN      D2),      DL-ALPHA-
TOCOPHEROL ACETATE (VITAMIN
E), CYANOCOBALAMIN (VITAMIN
B12).

52.     The competitor product lists "Organic Vanilla Flavor" on its ingredient list and does

not indicate the presence of other flavors not derived from vanilla, such as "Natural Flavor," as

listed in defendant's Products.

B.    Misleading to Have Identical or Similar Product Names Where There Are Significant
Differences in Product Quality or Composition

53.     So that consumers are not misled, products are required to be labeled in a way which

is consistent with other products of similar composition.

54.     This framework assures consumers will not be misled by the quality and components

of similarly labeled products where one product contains a greater amount, type and/or proportion

of a characterizing and valuable ingredient.

55.     Where two products are identified as "Vanilla Almondmilk (or Almond Beverage),"

consumers will be deceived into purchasing the lower quality product under the false impression

that it contains the equivalent amount of said ingredients or components. *See* 21 C.F.R. § 102.5(a)

("General principles.").[29]

VI. Conclusion

56.     The proportion of the characterizing component, vanilla, has a material bearing on

price or consumer acceptance of the Products because it is more expensive and desired by

---

[29] "The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name. Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods."

consumers.

57.    Had Plaintiff and class members known the truth about the Products, they would not have bought the Product or would have paid less for it.

58.    The Products contain other representations which are misleading and deceptive.

59.    As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than $5.99 per 64 OZ (across the Products), excluding tax – compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

60.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

61.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

62.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

63.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

64.    A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

65.    Plaintiff is a citizen of Bronx County, New York.

66.    Defendant Whole Foods Market Group, Inc. is a Delaware corporation with a principal place of business in Austin, Texas, Travis County.

67.    During the class period, Plaintiff purchased one or more of the Products for personal use, consumption or application based on the above representations, for no less than the price

16

indicated, *supra*, excluding tax, within their districts and/or states.

68.    Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

Class Allegations

69.    The classes will consist of consumers in all states where defendant operates its retail stores.

70.    Plaintiff will represent a national and New York state sub-class of persons who purchased any Products containing the actionable representations during the statutes of limitation.

71.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiffs and class members are entitled to damages.

72.    Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

73.    Plaintiff is an adequate representatives because her interests do not conflict with other members.

74.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

75.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

76.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

77.    Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350<br/>and Consumer Protection Statutes of Other States and Territories

78.    Plaintiff asserts causes of action under the consumer protection statutes of New York, General Business Law ("GBL") §§ 349 & 350.

79.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

80.    Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

81.    Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because (1) it gives the impression to consumers the Products are only flavored by the characterizing ingredient and contains more of the characterizing ingredient than they actually do and (2) the ingredient list fails to dispel ambiguity and reinforces the front-label impression as to a greater amount of the characterizing ingredients.

82.    Plaintiff and class members relied on the representations and omissions, paying more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

83.    Plaintiff incorporates by reference all preceding paragraphs.

84.    Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing the characterizing ingredient was present in greater amount and proportion than it was and affirmatively representing the Products was flavored only by this ingredient or component.

85.    Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

86.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or

service type.

87.    The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

88.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

89.    Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

90.    Plaintiff incorporates by reference all preceding paragraphs.

91.    Defendant manufactures and sells products which contain the identified characterizing ingredients and/or flavors which are desired by consumers.

92.    The Products warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

93.    Defendant's front labels informed and warranted to Plaintiff the Products contained only the characterizing ingredients to impart flavor, and that they were present in amounts sufficient to independently characterize the food and that the flavor imparted to the Products was a result of the food ingredients and not "natural flavors" or "other natural flavors."

94.    Defendant had a duty to disclose and/or provide a non-deceptive description of the Products flavoring on the front labels and knew or should have known same were false or misleading.

95.    This duty is based, in part, on defendant's position as one of the most recognized

companies in the nation in this sector.

96.    Plaintiff provided or will provide notice to defendant and/or its agents, representatives, retailers and their employees.

97.    The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

98.    Plaintiff and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

99.    Plaintiff incorporates by references all preceding paragraphs.

100.   Defendant's purpose was to sell products which purported to contain valuable and desired characterizing ingredient(s) or flavor(s), and represent the Products were exclusively or predominantly flavored from that ingredient and contained sufficient independent amounts of same.

101.   The Products were not flavored exclusively from the characterizing ingredient but also from "natural flavor" not derived from vanilla beans.

102.   Defendant's fraudulent intent is evinced by its failure to accurately indicate the Products contained flavor from non-vanilla sources on the front label, because it knows consumers prefer foods that are flavored from food ingredients instead of added flavor ingredients and contain enough of the characterizing food ingredients to flavor such products.

103.   Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with sufficient amounts of characterizing ingredients.

104.   Plaintiff and class members observed and relied on defendant's claims, causing them

to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

105.  Plaintiff incorporates by references all preceding paragraphs.

106.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE,** Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   October 9, 2019

 Respectfully submitted,

 Sheehan & Associates, P.C.
 /s/Spencer Sheehan

21

Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

*-and-*

Reese LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reesellp.com

1:19-cv-05566
United States District Court
Southern District of New York

Quincy Steele Jimmy Arriola, , individually and on behalf of all others similarly situated

Plaintiffs

- against -

Wegmans Food Markets, Inc.

Defendant

# Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  October 9, 2019

/s/ Spencer Sheehan
Spencer Sheehan